Argued December 19, 1935; affirmed January 7; reahearing denied February 11, 1936.

## CROISANT ET AL. *v.* CROISANT
(52 P. (2d) 1127)

*W. C. Winslow,* of Salem, for appellants.

*Mark V. Weatherford,* of Albany (Weatherford & Wyatt, of Albany, on the brief), for respondent.

BELT, J. This is a suit to foreclose a mortgage executed by the defendant Sophia Croisant to secure the payment of a note for $5,250 in favor of her children, the plaintiffs and appellants herein. The respondent, C. G. Croisant, a brother of the plaintiffs, asserts that the note and mortgage are without consideration and were given for the fraudulent purpose of preventing him from ever realizing anything on a prior unsecured note for $3,432.94, which he held against his aged mother. The decree of the lower court was in favor of the defendant C. G. Croisant.

A brief statement of the facts out of which this unfortunate family controversy arose follows: Sophia Croisant and her husband, G. W. Croisant, now deceased, lived on a 320-acre hill ranch in Linn county. It was there that they raised a family of six children, the defendant C. G. Croisant being the eldest. For many years the respondent and his brother, the appellant G. E. Croisant, operated this home ranch under a lease from their parents. This partnership arrangement between the brothers however was terminated in 1923 and for a year respondent carried on such farming operations alone. Thereafter the appellant H. W. Croisant took over the operation of the ranch. When the respondent C. G. Croisant quit farming operations he sold some livestock and various kinds of old farming machinery to his parents for $2,331.58, accepting in payment thereof an unsecured note. Later various sums of money were advanced by C. G. Croisant to his parents and, in 1926, a renewal note evidencing the total indebtedness was made in his favor for $3,378. We agree with appellants that the purchase of the old machinery was an improvident transaction for the aged couple but, as the years went by, no objection was made to the deal.

C. G. Croisant was demanding security for the note. Hence, a conference was held between the brothers at a law office in Albany, Oregon, on Friday, September 23, 1932—each side being represented by counsel—to see if some settlement of the respondent's claim could be made. The mother was not in attendance. Nothing was accomplished at this meeting as the respondent was not willing to accept the security offered, but it was understood and agreed that another meeting would be had within the course of the next ten days and that the mother would be in attendance if possible.

The validity of respondent's claim was not questioned. Neither did the plaintiffs at this time assert any claim of indebtedness against their mother.

On the day following the meeting at Albany, the plaintiffs made a hasty trip to Astoria to confer with their mother. This conference also was held in a law office and there were present, besides the plaintiffs and the mother, a brother Albert and a sister Mrs. E. C. Goodside. The respondent was not invited nor did he have any knowledge that such conference was being held. It was at this Astoria meeting that the note and mortgage set forth in the complaint were executed covering the property which the mother owned in Marion county. A note and mortgage for $1,200 covering property in Benton county were also executed by her in favor of the plaintiffs. These two mortgages included substantially all the real property of value belonging to the mother. The instruments were duly recorded on the Monday following.

It is the contention of the plaintiffs that these mortgages were executed in consideration of services rendered by them in taking care of their aged and feeble parents for a number of years, pursuant to an express contract. The respondent contends that such claim for compensation is a mere sham and pretense and that the mortgages were given to cheat and defraud him. The respondent was not advised by the plaintiffs as to what occurred at Astoria but when he did learn of the transaction, action on his note was commenced against his mother, and the real property included in the mortgages was attached and levied upon.

We agree with the learned trial judge that this hasty and secret meeting in Astoria plainly sounds in fraud. It was not open and above board. Why was not the respondent invited to sit in around the family confer-

ence table? Why did not the plaintiffs keep faith relative to the meeting arranged in Albany? It will be recalled that respondent took no action against his mother until he found that he had been thus deceived.

Let us consider briefly the testimony of the plaintiff, H. W. Croisant, on cross-examination.

"Q. Now then, you went down there and got your mother to sign that mortgage to prevent him from getting a lien on that property, didn't you? A. On the forty acres, yes, sir.

"Q. That was your purpose in hurrying down there immediately after you promised him you would bring your mother up for a conference with him about it? A. Well, but she wasn't able to come.

"Q. You didn't tell him she wasn't able to come, did you? A. He was too far away.

"Q. Well, you saw him in Corvallis, and you didn't tell him then, did you? A. Sure not.

*    *    *    *    *

"Q. When did you first get the idea of having a mortgage made to you and this note for an aggregate of six thousand dollars? A. Well, after we got down there and we talked it over and we—well, that was the only way we could see that we could possibly get a little something for what she owed us.

"Q. But you had no note at that time? A. No.

"Q. And the note was signed at that time, too, was it not? A. It was all signed up together and after we had decided.

"Q. But you had no note when you were in Albany, signed by your mother, had you? A. No.

"Q. So then you really made this out to beat your brother's claim, didn't you? A. No, not exactly, we made it out to protect ourselves for what she owed us.

"Q. But you never had any note up to that time? A. No."

Cross-examination of G. E. Croisant:

"Q. And you took the mortgage to defeat his claim, didn't you? A. We felt we didn't want to be shoved out altogether.

"Q. At the time—You took it to defeat his claim? A. Yes, sir."

It is significant that the mother was not called by appellants to testify in the instant case as to what she knew about the Astoria transaction. The respondent had no object in calling her as his claim was reduced to judgment.

It is true that on October 1, 1930, the mother and her husband made a written declaration of their intention that their sons and daughters should be compensated for services rendered in taking care of them in their old age, but provided that the same "shall be paid for out of our estates after our death". The mother, after the death of her husband, lived with one of the plaintiffs for several years on the farm which plaintiff had leased from her, but he never paid any rent and allowed the taxes to become delinquent for several years. At any rate, if such plaintiff has a claim, it would be against the estate after the death of his mother. It can not be used to defeat the valid note of his brother.

The decree of the lower court canceling the note and mortgage set forth in the complaint and dismissing the suit is affirmed. Respondent is entitled to costs and disbursements.

CAMPBELL, C. J., and ROSSMAN and BAILEY, JJ., concur.